CONFORMED COPY

BROWN WHITE & NEWHOUSE LLP
GEORGE B. NEWHOUSE, JR. (Bar No. 107036)
gnewhouse@brownwhitelaw.com
333 South Hope Street, 40th Floor
Los Angeles, California 90071-1406
Telephone: 213.613.0500
Facsimile: 213.613.0550

Attorneys for Relator
KARIN BERNTSEN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel* KARIN BERNTSEN, <br><br> Plaintiffs, <br><br> v. <br><br> PRIME HEALTHCARE SERVICES, INC.; PRIME HEALTHCARE SERVICES ALVARADO, LLC; PRIME HEALTHCARE SERVICES CENTINELA, LLC; PRIME HEALTHCARE SERVICES GARDEN GROVE, LLC; PRIME HEALTHCARE HUNTINGTON BEACH, LLC; PRIME HEALTHCARE LA PALMA, LLC; DESERT VALLEY HOSPITAL, INC.; PRIME HEALTHCARE SERVICES FOUNDATION, INC.; PRIME HEALTHCARE SERVICES ENCINO, LLC; VERITAS HEALTH SERVICES, INC.; PRIME HEALTHCARE SERVICES MONTCLAIR LLC; PRIME HEALTHCARE PARADISE VALLEY, LLC; PRIME HEALTHCARE SERVICES SAN DIMAS, LLC; PRIME HEALTHCARE SERVICES SHASTA, LLC; PRIME HEALTHCARE SERVICES II, LLC; PRIME HEALTHCARE ANAHEIM, LLC; DR. PREM REDDY, and DR. LUIS LEON, <br><br> Defendants. | Case No.: <br> **CV11-08214 AF (MANx)** <br><br> **COMPLAINT** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. §3730(B)** |

1

COMPLAINT

This is an action brought by Plaintiff/Relator Karin Berntsen on behalf of the United States of America pursuant to the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.* In support thereof, Relator alleges as follows:

## I.

## INTRODUCTION

1. Defendant Prime Healthcare Services, Inc. and the hospitals which it owns and operates through its subsidiaries (collectively referred to as "PHS") have defrauded the federal government of millions of dollars by billing for medically unnecessary inpatient short stay admissions which should have been classified as outpatient/observation cases. PHS's behavior is particularly egregious because in an effort to receive greater reimbursement from Medicare, PHS has explicitly instructed its physicians and hospital staff to disregard the Medicare guidelines and to choose inpatient admission over outpatient/observation status in almost every instance, regardless of whether the criteria for inpatient admission has been satisfied.

2. In addition, PHS wrongfully increases the MS-DRG payments it receives from Medicare through upcoding by falsifying information concerning the conditions and comorbidities associated with patients' diagnoses. PHS also has caused monetary damages to the government by fraudulently obtaining incentive payments under Medicare's Value-Based Purchasing Program.

## II.

## JURISDICTION AND VENUE

3. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 – 3732. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1345 and 31 U.S.C. § 3732(a), which specifically confers jurisdiction on this Court for actions brought under 31 U.S.C. § 3730.

4. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process, because at least one

455825.1

of the Defendants can be found in, resides in, transacts business in and has committed the alleged acts in the Central District of California.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because at least one of the Defendants can be found in, resides in and transacts business in the Central District of California, and many of the alleged acts occurred in this District.

6. Relator is an original source as defined by the False Claims Act in 31 U.S.C. § 3730(e)(4)(B) and Relator has made voluntary disclosures to the United States prior to the filing of this lawsuit.

## III.

## PARTIES

7. Relator Karin Berntsen is currently employed as the Director of Case Management at Defendant Alvarado Hospital. She was formerly the Director of Quality and Risk Management at that hospital. Relator is a registered nurse with more than twenty-years of experience in healthcare leadership and patient care positions. She has published two books regarding patient safety matters. From 2003 to 2005, she was the Director of Nursing in the County of San Diego, CA.

8. Defendant Prime Healthcare Services, Inc. ("PHS") is a Delaware corporation with its primary place of business at 3300 East Guasti Road, Ontario, San Bernardino County, California 91761. PHS was founded by Dr. Prem Reddy in 2001. PHS began its strategy of acquiring hospitals in financial distress with its 2004 purchase of Chino Valley Medical Center, which was in Chapter 11 bankruptcy. PHS incorporates a model of educating doctors in the financial aspects of medicine to change distressed hospitals into financially stable businesses. Through its wholly-owned subsidiaries, PHS now owns and operates fourteen hospitals in the state of California. The Defendant hospitals, and their corresponding subsidiaries, are:

    a. Alvarado Hospital Medical Center, located in San Diego, CA – Prime Healthcare Services Alvarado, LLC

b. Centinela Hospital Medical Center, located in Inglewood, CA – Prime Healthcare Centinela, LLC

c. Chino Valley Medical Center, located in Chino, CA – Veritas Health Services, Inc.

d. Desert Valley Hospital, located in Victorville, CA – Desert Valley Hospital, Inc.

e. Encino Hospital Medical Center, located in Encino, CA – Prime Healthcare Services Foundation, Inc. and Prime Healthcare Services Encino, LLC

f. Garden Grove Hospital Medical Center, located in Garden Grove, CA – Prime Healthcare Services Garden Grove, LLC

g. Huntington Beach Hospital, located in Huntington Beach, CA – Prime Healthcare Huntington Beach, LLC

h. La Palma Intercommunity Hospital, located in La Palma, CA – Prime Healthcare La Palma, LLC

i. Montclair Hospital Medical Center, located in Montclair, CA – formerly Prime Healthcare Services III, LLC; presently Prime Healthcare Services Foundation, Inc. and Prime Healthcare Services Montclair, LLC

j. Paradise Valley Hospital, located in National City, CA – Prime Healthcare Paradise Valley, LLC

k. San Dimas Community Hospital, located in San Dimas, CA – Prime Healthcare Services San Dimas, LLC

l. Shasta Regional Medical Center, located in Redding, CA – Prime Healthcare Services Shasta, LLC

m. Sherman Oaks Hospital, located in Sherman Oaks, CA – Prime Healthcare Services II, LLC

n. West Anaheim Medical Center, located in Anaheim, CA – Prime Healthcare Anaheim, LLC

COMPLAINT

9. Prime Healthcare Services Foundation, Inc., d/b/a Encino Hospital Medical Center and Montclair Hospital Medical Center, ("PHSF") is a Delaware corporation with its primary place of business at 3300 East Guasti Road, 2nd Floor, Ontario, California, 91761. A wholly owned and operated subsidiary of PHS, PHSF was founded by a $1 million donation from Dr. Prem Reddy. Encino Hospital Medical Center and Montclair Hospital Medical Center were donated to PHSF by PHS in 2009 and 2011, respectively. PHSF is a 501(c)(3) charitable organization.

10. Prime Healthcare Services Alvarado, LLC d/b/a Alvarado Hospital Medical Center ("Alvarado") is a Delaware corporation with its primary place of business at 6655 Alvarado Road, San Diego, California, 92120. Alvarado was acquired by PHS in November 2010.

11. Dr. Prem Reddy is the founder and Chairman of the Board of Prime Healthcare Services, Inc. Reddy actively oversees the acquisition and restructuring of all new hospitals acquired by PHS, including implementing uniform protocols at all PHS facilities.

12. Dr. Luis Leon is the regional CEO for Alvarado Hospital Medical Center and Paradise Valley Hospital. Leon was made regional CEO after the former CEO of Alvarado Hospital Medical Center resigned when the hospital was acquired by PHS.

## IV.

## REGULATORY OVERVIEW

### A. Inpatient Short Stay Hospital Admissions

13. In an effort to combat Medicare fraud and abuse, The Centers for Medicare and Medicaid Services (CMS) has increased scrutiny on the medical necessity of short stay inpatient hospital admissions. Due to the greater reimbursement for inpatient services versus observation services, the Government requires strict adherence to inpatient admission rules.

14. Chapter 6, Section 6.5.2, of the Medicare Program Integrity Manual states that,

> Inpatient hospital care must be medically necessary, reasonable, and appropriate for the diagnosis and condition of the beneficiary at any time during the stay. The beneficiary must demonstrate signs and/or symptoms severe enough to warrant the need for medical care and must receive services of such intensity that they can be furnished safely and effectively only on an inpatient basis.

It further provides that "factors that may result in an inconvenience to a beneficiary or family do not, by themselves, justify inpatient admission." *Id.* Inpatient care is only required if the beneficiary's medical condition, safety, or health would be significantly and directly threatened if care were to be provided in a less intensive setting. *Id.*

15. Chapter 1, Section 10 of the Medicare Benefit Policy Manual sets forth the following factors that should be considered by the physician when deciding whether to admit a patient as an inpatient: the severity of the signs and symptoms exhibited by the patient; the medical predictability of something adverse happening to the patient; the need for diagnostic studies that appropriately are outpatient services; and the availability of diagnostic procedures at the time.

16. Short stay hospital stays have not only appeared on the OIG Work Plan but have also been a focus of Medicare's Program for Evaluating Payment Patterns Electronic Reports (PEPPER reports). Many hospitals use decision support system tools such as InterQual to assist them in the inpatient admission versus outpatient/observation status decision making process.

17. On average, Medicare pays approximately $4,500 to $5,000 more for a DRG than for an Outpatient Ambulatory Payment Classification (APC) with its bundled observation fee. Therefore, improperly billing for just one inpatient stay which should have been classified as observation status every day would result in about $1.7 million in overpayments from Medicare annually.

//
//

455825.1

COMPLAINT

B. **Medical Severity – Diagnostic Related Groups under the Medicare Inpatient Prospective Payment System**

18. Hospitals such as the PHS Defendants are reimbursed for their inpatient services under the Medicare Inpatient Prospective Payment System (IPPS). Under this system, the ICD-9 Procedure Code and the ICD-9 Diagnostic Code (and in some cases age, sex and demographics) determine the appropriate MS-DRG classification. ICD-9 procedures will typically be grouped to a MS-DRG classification which indicates: with major complications and comorbidities (MCC); with complications and comorbidities (CC); or without complications and comorbidities (without CC/MCC).

19. Complications and Comorbidities typically increase the reimbursement rate for an MS-DRG. Thus, patients' complications and comorbidities must be accurately recorded in order to ensure that the hospital is appropriately reimbursed by Medicare.

## V.

## FACTUAL ALLEGATIONS

A. **False Claims Act violations resulting from improper inpatient hospital admissions and fraudulent claims for DRG payments based on upcoding**

20. In November 2010, Defendant Prime Healthcare Services purchased Alvarado Hospital. Subsequent to the purchase, Alvarado's entire executive team, including the CEO Harris Koenig, resigned and Dr. Luis Leon was installed as the Regional CEO overseeing Alvarado Hospital. PHS's Chairman of the Board is Dr. Prem Reddy whose medical specialties are internal medicine and cardiology.

21. Approximately seventy-percent of Alvarado Hospital's patients are covered by Medicare and other federal healthcare programs. Approximately twenty-percent are covered by Medicaid. The vast majority of Alvarado's patients are initially treated at the hospital's emergency room where a determination is made by attending

455825.1

COMPLAINT

physicians as to whether the patient should be placed under observation or admitted as an inpatient.

22. Prior to PHS's takeover of Alvarado, Relator, as the Director of Quality and Risk Management, in conjunction with the then in-place executive team, implemented a number of controls to preclude abuse of Medicare regulations regarding short stay inpatient hospital stays. These controls augmented the InterQual decision support computer program then in use at Alvarado. Statistical reviews conducted subsequent to the implementation of Relator's procedures confirmed Alvarado's one-day stay admissions were well within accepted norms.

23. In January 2011, more than 250 employees, including most of Alvarado Hospital's Quality and Risk Management Department staff were dismissed by PHS. At about the same time, Dr. Reddy implemented a monthly Hospitalist Meeting attended by the senior and high-volume admitting physicians as well as key administrators. The first such meeting was convened on February 1, 2011 at which time Dr. Reddy startled those present by stating, "We don't do observation. All patients should be inpatient. You can always find a reason to make the patient an inpatient."

24. At another monthly meeting in January 2011, the former Chief Operating Officer, Darlene Wetton, informed the Medical Staff Department of Medicine Committee that PHS does not do observation, but admits all patients as inpatients. Thomas Young, MD the immediate past chief of the Department of Medicine strongly conveyed to Ms. Wetton that he disagreed with PHS's directive not to use observation status and that he personally would continue to identify observation patients when appropriate. Ms. Wetton resigned before the end of January 2011.

25. Dr. Reddy reiterated his instructions concerning inpatient admissions at subsequent Hospitalist meetings attended by Relator, including a meeting on May 3, 2011 at which he also encouraged those present to upcode by adding complications or

comorbidities such as encephalopathy and fecal impaction to a diagnosis in order to increase the DRG reimbursement rate. For example, he stated:

> "If the patient is elderly, you should add encephalopathy for a higher payment. You are missing some of these elderly patients. But, be careful . . . I don't want to go to jail, ha, ha, ha."

> "If you code fecal impaction in GI bleed diagnoses, I can get $3,000 more per case."

> "If the patient leaves against medical advice you are free to document whatever conditions you want."

26. Within weeks of Alvarado's purchase, the coding manager, Joseph Ingranda resigned. Subsequent to the February 1 meeting, Relator was told by a hospital coder, that the coder was instructed to make no coding distinction between atrial fibrillation and atrial flutter, but rather to code at the highest paying DRG. That coder resigned shortly thereafter as did her supervisor, Lori Cardle, vice-president of Revenue Cycle.

27. At the August 23, 2011 Case Management meeting, Dr. Leon confirmed the previous statements regarding patient observation status and specifically instructed that the Case Management Department no longer be involved in the process of assisting with the identification of observation status and that the use of the InterQual system to evaluate observation status be discontinued.

28. Prior to the meeting, Dr. Leon instructed Dr. Larry Emdur, a lead physician, to designate at least one out of five chest pain patients for observation status in an apparent effort to make it more difficult for auditors to detect PHS's deliberate practice of under-identifying observation status. Nevertheless, the Program for Evaluating Payment Pattern Electronic Report (PEPPER) for Alvarado began to reflect an inordinate increase in one-day stays, respiratory infection diagnoses, Septicemia infection diagnoses and other anomalies.

29. When Relator discussed her concerns regarding the observation status changes with Dr. Leon, he informed her that observation billing was his responsibility and if Medicare comes after him, he will "throw his group of lawyers at them."

30. At a September 2, 2011 meeting called by Dr. Leon, he instructed the Emergency Department manager, Tammy Russell, to eliminate references to observation status on hospital admission forms. Later in that meeting, Ms. Russell mentioned that a new ER doctor, Donald R. Sallee identified six observation status patients on the night of September 1-2, provoking Dr. Leon to comment: "Six! Six observation patients in one night! That is not right. We should do six observation patients in one year!" He then instructed Ms. Russell to provide him the medical files of those patients and, after commenting, "These new ER doctors need to be trained," instructed Ms. Russell to summon Dr. Sallee to a subsequent private meeting.

31. As an instructional exercise regarding enhanced reimbursement coding at the September 6, 2011 Hospitalist Meeting, Dr. Reddy personally reviewed and manually altered patient records without consulting treating physicians. He thereafter handed the records to Dr. Leon who reviewed the changes. In turn, Dr. Leon handed them to Marianna Martinez, Director of Health Information Systems to effect the changes. At this same meeting, Dr. Manorama Reddy said to Dr. Prem Reddy, "We are not using observation like you told us, and almost all patients are admitted as inpatients." Dr. Reddy nodded affirmatively to Dr. Manorama Reddy when she made this statement.

32. Relator believes the improprieties occurring at Alvarado Hospital are common to the other medical facilities operated by PHS for the following reasons:

- Dr. Leon is the CEO of both PHS's Alvarado and Paradise Valley hospitals;

- Dr. Krishna P. Surapaneni, a vendor with MedWrite Biz for PHS' hospitals. commented to Relator, "PHS does not do observations";

COMPLAINT

455825.1

- Alvarado shares its ER doctors with other PHS hospitals including Centinela Hospital Medical Center, Chino Valley Medical Center, Encino Hospital Medical Center, Huntington Beach Hospital, La Palma Intercommunity Hospital, Montclair Hospital Medical Center, Sherman Oaks Hospital and San Dimas Community Hospital;

- Billing for all PHS hospitals is centralized at PHS' Ontario headquarters; and

- Dr. Reddy personally reviews and, if necessary, modifies billings prior to submission to government healthcare programs.

33. Relator estimates that PHS Alvarado's fraudulent short stay inpatient admission billings to government healthcare programs already exceeds $4 million. Considering Alvarado is a typical hospital within the PHS system; the likelihood that all other PHS facilities are falsely billing Medicare in the same manner as Alvarado; and that some of those hospitals have been within the PHS system for at least six years, Relator estimates that PHS's false billings just with regard to improper short-stay inpatient admissions alone exceeds $50 million.

B. **Specific Instances of Fraudulent Inpatient Hospital Admissions**

34. Relator has evidence of specific instances in which PHS has wrongfully admitted Medicare patients to the hospital as inpatients when they should have been placed under observation instead. The patients in the chart below were admitted to Alvarado Hospital as inpatients even though the medical necessity for an inpatient admission had not been satisfied.

| Patient | Date | Inpatient Diagnosis | Findings | Physician's Initials |
|---|---|---|---|---|
| A | 9/11/2011 | Chest Pain | 12 lead ECG normal Troponins normal | PL |
| B | 9/16/2011 | Chest Pain | 12 lead ECG normal Troponins normal | HT |

455825.1

| C | 9/11/2011 | Dizziness | 12 lead ECG normal<br>CBC/Chemistry normal | ER |
| D | 8/1/2011 | Chest Pain | 12 lead ECG normal<br>Troponins normal | ER |

35. Relator has evidence of several additional instances of fraudulent inpatient admissions which are not represented in the above chart but will be provided to the government in the disclosure materials.

### C. False Claims resulting from violations of the Value-Based Purchasing program

36. Value-Based Purchasing (VBP) is a program that financially incentivizes hospitals to perform at the top of the scale in 12 quality measures and 8 patient satisfaction measures. Hospital employees (usually quality staff) review medical records and complete complex data forms with guidelines from Medicare on diagnoses including, heart attack, pneumonia, heart failure and a select group of surgical patients. The data is submitted to an organization contracted by CMS and ultimately the data is publicly reported on the Medicare Hospital Compare Website. A hospital may keep up to 1% of their annual Medicare DRG payment update if the hospital exceeds national benchmarks for the best performing hospitals. CMS has a very sophisticated scoring system to calculate a hospital's performance measures. Nationally, the funds equal about $850 million dollars which will be spread out among the top performing hospitals.

37. Previously, Medicare incentives were 0.4% of the annual Medicare DRG payment update made to hospitals for accurate collection of data. Beginning July 1, 2011, performance and achievement will be measured. The best performing hospitals will receive up to 1% of their Medicare DRG payment update and lower performing hospitals risk losing up to 1% of their annual Medicare DRG payment update. This will rise gradually to 2% of the annual Medicare DRG payment update by 2017.

COMPLAINT

455825.1

Hence, hospitals are motivated to score at the 100% level in these indicators. There are validation reviews performed by an organization contracted with Medicare; however, a very small number of medical records (5 per quarter) are validated by CMS.

38. In December 2010, after PHS purchased Alvarado Hospital, the PHS Corporate Director of Performance Improvement, Harsha Upadhyay, told Relator that Dr. Prem Reddy would not tolerate any score under 100% and that Mr. Upadhyay was to visit the PHS Hospitals and account for any quality indicator that was not 100%.

39. In May of 2011, an employee of Alvarado Hosptial, Theresa Jocson, RN, explained to Relator that she was asked by Mr. Upadhyay to place a document in the medical record retrospectively, which was not originally in the chart. Inclusion of this document in the record would have resulted in a higher score for one of the quality indicators. Ms. Jocson refused to place the document in the chart, and she notified her immediate supervisor, who also stated that information which was not originally part of the medical record should not be placed in the chart.

40. Before PHS purchased Alvarado Hospital, Relator, as Director of Quality and Risk Management, worked to improve Alvarado Hospital's quality scores through multiple methods including committee efforts, educational training, and performance improvement techniques. Although Alvarado made progress over the years, it had not reached 100% in all areas. In fact, it is almost impossible for a hospital to obtain a score of 100% in all categories on a consistent basis. Despite this fact, the following PHS hospitals have been consistently at 100% for several years: LaPalma Intercommunity Hospital, Huntington Beach Hospital, West Anaheim Medical Center, San Dimas Community Hospital, Sherman Oaks Hospital. Based on the direction from PHS's Corporate Director of Performance Improvement and on Relator's expertise in this area, Relator believes that records at these hospitals have been altered inappropriately to meet the 100% compliance requirements in order to receive the financial incentives provided under the Value-Based Purchasing program.

41. When the Medicare incentives were 0.4% of the annual Medicare DRG payment update, the PHS hospitals identified above which scored 100% each received approximately $300,000 to $1 million additional dollars in incentive payments each year depending on the size of the hospital.

42. Relator suspects that PHS is continuing to engage in this fraudulent behavior in order to qualify for VBP incentive payments since future payments based on hospital performance during the time period from July 1, 2011 to March 31, 2012 will increase from 0.4% to 1%. The amount of money at stake is now even greater, especially since lower performing hospitals will not only fail to receive an incentive payment but may also have to forfeit up to 1% of their annual Medicare DRG payment.

## VI.

## FIRST CLAIM FOR RELIEF

### A. Violations of the Federal False Claims Act, 31 U.S.C. § 3729(a) Against All Defendants

43. Relator incorporates paragraphs 1 - 42 of this complaint as though fully set forth herein.

44. As described above, Defendants have submitted and/or caused to be submitted false or fraudulent claims by billing for medically unnecessary inpatient short stay admissions which should have been classified as outpatient/observation cases; by wrongfully increasing their DRG payments from Medicare by falsifying information concerning patients' diagnoses, conditions, and comorbidities; and by fraudulently obtaining incentive payments under Medicare's Value-Based Purchasing Program.

45. In doing so, Defendants have violated:

    (1) 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting, or causing to be presented, false or fraudulent claims for payment or approval; and/or

COMPLAINT

455825.1

(2) 31 U.S.C. § 3729(a)(1)(B) by knowingly making, using or causing to be made or used, a false record or statement material to a false or fraudulent claim; and/or

(3) 31 U.S.C. § 3729(a)(1)(G) by knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government.

46. To the extent any of the conduct alleged herein occurred on or before May 20, 2009, Relator alleges that Defendants knowingly violated 31 U.S.C. § 3729(a)(1); 31 U.S.C. § 3729(a)(2); and 31 U.S.C. § 3729(a)(7) prior to amendment, by engaging in the above-described conduct.

47. Because of the false or fraudulent claims made by Defendants, the United States has suffered, and continues to suffer damages.

**PRAYER**

WHEREFORE, Relator requests that judgment be entered against Defendants ordering that:

a. Defendants pay an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty against Defendants of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

b. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

c. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, *et seq.*;

d. Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d); and

e. The United States and Relator be granted all such other relief as the Court deems just and proper.

DATED: October 03, 2011

Respectfully submitted,

BROWN WHITE & NEWHOUSE LLP

By _____
GEORGE B. NEWHOUSE, JR.
Attorneys for Relator
KARIN BERNTSEN

## DEMAND FOR JURY TRIAL

A jury trial is requested for all issues so triable.

DATED: October 03, 2011

Respectfully submitted,

BROWN WHITE & NEWHOUSE LLP

By _____
GEORGE B. NEWHOUSE, JR.
Attorneys for Relator
KARIN BERNTSEN

COMPLAINT

455825.1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

### CV11- 8214 GAF (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] Western Division<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] Eastern Division<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
UNITED STATES OF AMERICA, ex rel. KARIN BERNTSEN

**DEFENDANTS**
PRIME HEALTHCARE SERVICES, INC., et al.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

George B. Newhouse, Jr.
BROWN WHITE & NEWHOUSE LLP, 333 S. Hope Street, 40th Floor
Los Angeles, CA 90071, (213) 613-0500

**Attorneys (If Known)**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ in excess of $50,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Act, 31 U.S.C. § 3729

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | | | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | | | FORFEITURE/ PENALTY | |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| | | | ☐ 442 Employment | | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | | ☐ 443 Housing/Acco- mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | | ☐ 862 Black Lung (923) |
| | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | | | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | IMMIGRATION | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | ☐ 690 Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | | |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | | |

CV11-08214

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)          CIVIL COVER SHEET          Page 1 of 2



# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☒ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | San Diego |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, San Bernardino County, Orange County | Shasta, San Diego |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, San Bernardino County, Orange County | Shasta, San Diego |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_ **Date** October 3, 2011

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |