UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. KARIN BERNTSEN,<br><br>        Plaintiff,<br><br>    v.<br><br>PRIME HEALTHCARE SERVICES, INC., et al.,<br>        Defendants. | CASE NO. 11-CV-8214 PJW<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS RELATOR'S FOURTH AMENDED COMPLAINT |

## I.

## INTRODUCTION

Before the Court is Defendants' motion to dismiss relator Karin Berntsen's Fourth Amended Complaint. For the following reasons, the motion is denied.

## II.

## STATEMENT OF FACTS

Relator Karin Berntsen is the former Director of Performance Improvement at Alvarado Hospital in San Diego, California. (Fourth Amended Complaint ("FAC") at ¶¶ 9-10.) Previously, she was Alvarado Hospital's Director of Quality and Risk Management and then its Director of Case Management. (FAC at ¶¶ 9-10.) Alvarado Hospital is owned and operated by Prime Healthcare Services, Inc. ("Prime"), which

owns and operates thirteen other hospitals in the state of California. (FAC at ¶ 10.)  Prime was founded by Dr. Prem Reddy in 2001.  He is now Chairman of the Board.  (FAC at ¶¶ 10-24.)

Under the federal government's Medicare program, the government reimburses hospitals when the services they provide meet certain criteria.  The gravamen of Berntsen's complaint is that Prime and the hospitals it owns and operates have defrauded the government of millions of dollars by engaging in unlawful patient admission practices, falsifying patient records, and refusing to discharge patients or transfer them to another hospital in an effort to increase Medicare reimbursements.  (FAC at ¶¶ 1-4.)  Berntsen contends that these fraudulent activities were occurring at all of Prime's hospitals.  (FAC at ¶ 49.)

She alleges, for instance, that Prime hospitals regularly admitted Medicare patients as inpatients--when they should have been merely placed under observation--and that such admissions violated Medicare guidelines.  (FAC at ¶¶ 1, 71-72.)  Prime then unlawfully submitted claims to Medicare based on those inpatient admissions and the government paid the claims.  (FAC at ¶¶ 71-72.)  Because the government provides greater reimbursement for inpatient services than observation services, Prime received larger reimbursements based on the excessive inpatient admissions.  (FAC at ¶¶ 15, 71.)

In addition, Prime engaged in a practice called "upcoding," in which it falsified patient records regarding the complications and comorbidities of patients' diagnoses.  (FAC at ¶ 2.)  According to Berntsen, Dr. Reddy instructed physicians and staff to change patient records after the attending physicians completed their diagnoses to

2

maximize Medicare reimbursement. (FAC at ¶¶ 73-82.) He also instructed them to insert the word "possible" before certain diagnoses to qualify for a higher reimbursement, even when there was no medical basis for doing so. (FAC at ¶¶ 73-82.)

Plaintiff claims that Prime hospitals refused to discharge or transfer patients when it was appropriate for them to be discharged or transferred. (FAC at ¶¶ 83-98.) As a result, Prime hospitals qualified for a higher Medicare reimbursement rate than they would have had the patients been transferred to other health care facilities. (FAC at ¶¶ 83-98.) She points out, for example, that Dr. Reddy instructed staff to find ways to increase patients' lengths of stay to maximize the hospitals' reimbursement rate. (FAC at ¶¶ 83-98.)

### III.

### ANALYSIS

Based on the above practices, Berntsen sues Prime, the individual Prime hospitals, and certain doctors for violations of the False Claims Act. (FAC at ¶¶ 100-104.) She claims that she is an original source of this information and made disclosures to the government before filing this lawsuit. (FAC at ¶ 8.)

Defendants move to dismiss the FAC on the grounds: 1) Berntsen was not an original source of the information and prior public disclosures of Berntsen's allegations in the news media bar her claims; and 2) her fraud claims are not pleaded with sufficient particularity, as required under Federal Rule of Civil Procedure 9(b). For the following reasons, the motion is denied.

3

A. <u>Standard of Review</u>

In ruling on a motion to dismiss, the Court accepts as true the factual allegations contained in the Fourth Amended Complaint and views all inferences in a light most favorable to the plaintiff. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). The Court does not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal is appropriate if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Zimmerman*, 255 F.3d at 737.

A. <u>The Public Disclosure Bar</u>

Defendants argue that Berntsen's allegations of Prime's Medicare fraud were repeatedly disclosed in the news media prior to her filing the original complaint on October 3, 2011 (and, obviously, the Fourth Amended Complaint on August 8, 2014). (Motion at 4.) Because the False Claims Act precludes a private party from bringing a *qui tam* action where the fraud is already publically known, Defendants argue that Berntsen's allegations must be dismissed unless she can show that she is an original source of the information. (Motion at 14-15.) In support of their argument, Defendants point to a number of reports and articles on the allegedly fraudulent practices at Prime hospitals. (Doc. No. 93, Request for Judicial Notice.)

Berntsen points out that the Government recently filed a notice of opposition to dismissal on the basis of the public disclosure bar and argues that, as a result, the Court is barred from dismissing the FAC on that ground, even were it to conclude that the allegations were

publicized before she filed suit and she was not an original source of the information.  (Opposition at 3-4; *see also* Doc. No. 95.)

Defendants disagree.  They contend that the Government's opposition to dismissal on the basis of the public disclosure bar only means that the Court is not required to dismiss the action but may still do so in its discretion, and should here.  (Reply at 1-2.)

Title 31 U.S.C. § 3730(e)(4)(A) provides, in relevant part,

> "*The court shall dismiss an action or claim under this section, unless opposed by the Government*, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed...from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information."

The operative language in § 3730(e)(4)(A) italicized above was amended by the Patient Protection and Affordable Care Act of 2010. And it appears that there is very little case law interpreting the impact of the Government's opposition to dismissal on the basis of the public disclosure bar after the 2010 amendments.  The authority that does exist, however, seems to support the Government's and Berntsen's position that dismissal on this ground is precluded in the face of the Government's opposition to the motion.

Berntsen points to an unpublished order from the Southern District of Florida in *Marjan Mazza v. Miami-Dade County, et al.*, No. 10-24546-CIV-HOEVELER (S.D. Fl. Aug. 12, 2013).  In that case, as here, the plaintiff filed a *qui tam* action premised on violations of the False Claims Act and the Government opposed dismissal on the basis of the public disclosure bar.  The court denied the defendants' motion to dismiss because it found that plaintiff was an original source of the information but went on to explain that, because "the United

5

1  States has opposed dismissal on this basis, the Court's directive is
2  clear - the Defendants' motion to dismiss on this ground must be
3  denied." *Mazza*, No. 10-24546-CIV-HOEVELER, at 5.
4      The second case cited by Berntsen is also persuasive, *United*
5  *States of America ex rel Baker v. Community Health Sys., Inc., et al.*,
6  No. 5-279 WJ/ACT (D. N.M. May 14, 2014).  There, defendants were
7  alleged to have violated the FCA by submitting false Medicaid claims.
8  On a motion for reconsideration of its previous decisions, the court
9  explained that, under the 2010 amendments to the FCA, "the
10 Government's opposition precludes application of the public disclosure
11 bar" as to those claims.  *Id.* at 11, 14, 18.
12     Finally, as the Government has pointed out, the FCA is a tool
13 used by the United States to redress fraud perpetrated against the
14 government.  Historically, Congress used the public disclosure bar to
15 "strike a balance between encouraging private persons to root out
16 fraud and stifling parasitic lawsuits."  *See Graham County Soil and*
17 *Water Conservation Dist. V. U.S. ex rel. Wilson*, 559 U.S. 280, 281
18 (2010).  For that reason, where the Government indicates that it
19 supports the relator's action, it would be illogical for the Court to
20 conclude that the relator's action was parasitic.  Thus, the Court
21 finds that Berntsen's and the Government's position comports more
22 closely with both the existing authority on this issue and the likely
23 statutory intent.
24     For these reasons, Defendants' motion to dismiss on the basis of
25 the public disclosure bar is denied.  As such, the Court need not and
26 does not reach Defendants' argument that Berntsen must show that she
27 is an original source for the information in the FAC.
28

B.   Federal Rule of Civil Procedure 9(b)

Finally, Defendants argue that the FAC must be dismissed for failure to allege fraud with the requisite particularity under Federal Rule of Civil Procedure 9(b). (Motion at 23-24.) They contend that Berntsen's knowledge is limited to her experience at Alvarado Hospital and that she cannot superimpose her experiences there on the 13 other hospitals in the system. They argue that her "everyone did everything" description of the alleged fraud does not satisfy her obligations under Rule 9(b). For the following reasons, this argument is rejected.

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotations omitted). Where there are allegations of fraud against multiple defendants, Rule 9(b) does not permit a plaintiff to "merely lump multiple defendants together but requires plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011). The Court finds that Berntsen has met this standard in the FAC.

At pages 16-20 of the FAC, Berntsen alleges that the fraudulent activities she describes are occurring "throughout the Prime Healthcare system, including each of the Defendant PHS hospitals." (FAC at ¶ 49.) She claims that she knows this because she attended meetings in which Dr. Reddy issued system-wide instructions regarding upcoding and admitting patients as inpatients where it was not

medically appropriate to do so.  (FAC at ¶¶ 50-51.)  She also claims that she participated in training sessions with employees from other hospitals where PHS representatives encouraged them to always admit patients as inpatients because "[w]e don't do observation."  (FAC at ¶ 53.)  In addition, she alleges that, in the course of her professional duties, she reviewed reports demonstrating that all of Prime's hospitals demonstrated significant increases in inpatient admissions after Prime took over those hospitals.  (FAC at ¶ 56.)  Berntsen further claims that all Prime hospitals use standardized forms (generally without the observation "check-off" option) and that some of Prime hospitals' contracts for ER physicians called for the hospitals to share physicians--meaning that physicians trained and instructed at one location would also work at other locations.  (FAC at ¶¶ 57-58, 61.)  Finally, although Berntsen's allegations regarding Defendants' refusal to transfer or discharge patients are primarily based on her experience at Alvarado, she alleges that Dr. Reddy conducted similar meetings at all hospitals where he gave the same instructions and authorized the same procedures for transfer and discharge.  (FAC at ¶ 98.)

   Based on these allegations, the Court is satisfied that Berntsen has stated an FCA claim with sufficient particularity as against all Defendants.  Having carefully reviewed the FAC, the Court finds that it includes the who, what, when, where, and how of the alleged fraud.  The FAC describes a standardized system of meetings, procedures, hospital forms, and training sessions by all Prime hospitals to perpetrate Medicare fraud and provides sufficient detail regarding why relator Berntsen believes these practices are common to all

Defendants. For this reason, Defendants' motion to dismiss the FAC under Rule 9(b) is denied.[1]

IT IS SO ORDERED.

DATED: November 20, 2014

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Consent\USA v. Bernsten\MTD ORDER.wpd

---

[1] Defendants also moved to dismiss on the ground that Berntsen cannot state a claim premised on Alvarado Hospital's failure to maintain a Medicare utilization review program because, though having such a program is a regulatory requirement, it is not a requirement for Medicare reimbursement. (Motion at 21-22.) In her Opposition, however, Berntsen makes clear that she is not claiming an FCA violation based on Defendants' failure to have a utilization review program but has included those allegations simply to show that Defendants deliberately avoided review to disguise medically unnecessary patient admissions. (Opposition at 2, n.1.) The Court, therefore, does not find it necessary to further address the motion to dismiss that claim.