BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
EILEEN M. DECKER
United States Attorney
DOROTHY A. SCHOUTEN, AUSA
Chief, Civil Division
DAVID K. BARRETT, AUSA
Chief, Civil Fraud Section
LINDA A. KONTOS, AUSA
Deputy Chief, Civil Fraud Section
LYNN HEALEY SCADUTO, AUSA
California State Bar No. 205291
      Room 7516, Federal Building
      300 North Los Angeles Street
      Los Angeles, California 90012
      Tel: (213) 894-7395; Fax: (213) 894-5139
      E-mail: Lynn.Scaduto@usdoj.gov
MICHAEL D. GRANSTON
DANIEL R. ANDERSON
MARIE V. BONKOWSKI
Attorneys, Civil Division
United States Department of Justice
      601 D Street NW, Room 9116
      Washington, DC 20004
      Tel: (202) 514-6833; Fax:  (202) 305-7797
      E-mail: Marie.Bonkowski@usdoj.gov
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KARIN BERNTSEN,<br><br>Plaintiff,<br><br>v.<br><br>PRIME HEALTHCARE SERVICES, INC.; *et al.*,<br><br>Defendants. | NO. CV 11-08214 PJW (MG)<br><br>NOTICE OF MOTION AND UNOPPOSED MOTION OF THE UNITED STATES TO PARTIALLY INTERVENE FOR GOOD CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF LYNN HEALEY SCADUTO IN SUPPORT THEREOF<br><br>[FILED OR LODGED CONCURRENTLY: [PROPOSED] ORDER; [PROPOSED] NOTICE OF ELECTION OF THE UNITED STATES TO INTERVENE IN PART AND DECLINE TO INTERVENE IN PART AND [PROPOSED] ORDER THEREON]<br><br>Date:  June 21, 2016<br>Time:  1:30 p.m.<br>Place:  Courtroom 23<br><br>The Honorable Patrick J. Walsh |

PLEASE TAKE NOTICE that on June 21, 2016, at 1:30 p.m. or as soon thereafter as the matter may be heard, the United States of America ("United States") will and hereby does move this Court for an order granting the United States leave to partially intervene in this action for good cause pursuant to 31 U.S.C. § 3730(c)(3) and Rule 24(b) of the Federal Rules of Civil Procedure, and allowing the United States to file a complaint in intervention within 30 days after the date of the Court's order.  The United States' Motion To Partially Intervene For Good Cause will be made before the Honorable Patrick J. Walsh, Chief United States Magistrate Judge, in Courtroom 23, located at the United States Courthouse, 312 N. Spring Street, Los Angeles, California 90012.

This motion is made on the grounds that good cause exists to permit the United States to intervene pursuant to 31 U.S.C. § 3730(c)(3).  This motion is made upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.  This motion is made following the conference of counsel under Local Rule 7-3, which took place on May 16, 2016.

Dated: May 23, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
EILEEN M. DECKER
United States Attorney
DOROTHY A. SCHOUTEN, AUSA
Chief, Civil Division
DAVID K. BARRETT, AUSA
Chief, Civil Fraud Section
LINDA A. KONTOS, AUSA
Deputy Chief, Civil Fraud Section
MICHAEL D. GRANSTON
DANIEL R. ANDERSON
MARIE V. BONKOWSKI
Attorneys, Civil Division
United States Department of Justice

*/s/  Lynn Healey Scaduto*
LYNN HEALEY SCADUTO, AUSA
Attorneys for the United States of America

1

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2   The United States of America ("United States") respectfully requests pursuant to

3   31 U.S.C. § 3730(c)(3) and Rule 24(b) of the Federal Rules of Civil Procedure that the

4   Court permit the United States to partially intervene for good cause in this *qui tam* action

5   with respect to claims and allegations that the Defendants submitted or caused the

6   submission of claims to Medicare for unnecessary inpatient stays as pled against all

7   defendants other than defendants Luis Leon and Prime Healthcare Foundation.  Relator

8   Karin Berntsen ("Relator") supports intervention, and Defendants Prime Healthcare

9   Services, Prime Healthcare, fourteen hospitals operated by Prime in California, Dr. Prem

10   Reddy, Prime's founder and chairman of the board, and Luis Leon, the CEO of Alvarado

11   Hospital (collectively, "Defendants") have informed the United States that they will not

12   oppose this motion.

13   **I.      BACKGROUND**

14   On October 3, 2011, Relator filed this *qui tam* action alleging that Defendants had

15   submitted claims to Medicare in violation of the False Claims Act, 31 U.S.C. §§ 3729 -

16   3733 ("FCA").  Relator works at one of the fourteen defendant hospitals and alleges,

17   among other things, that Defendants routinely submit, or cause to be submitted, inflated

18   claims to Medicare for reimbursement for services rendered to beneficiaries who were

19   admitted as inpatients when they should have been treated as outpatients on

20   "observation" status at the hospital and/or who did not actually have the complications

21   and comorbidities that increased the Medicare reimbursement amount.

22   On December 26, 2013, the Court unsealed the action after the United States filed

23   a notice on December 23, 2013, informing the Court that it could not make an election

24   decision before the Court's deadline.  Docket Nos. 43, 42.  In that notice, the

25   Government reserved the right to intervene for good cause at a later date pursuant to 31

26   U.S.C. § 3730(c)(3) and advised the Court and Defendants that "the Government's

27   investigation w[ould] continue."  Docket No. 42.  Defendants subsequently moved to

28   dismiss Relator's *qui tam* action.  Docket No. 91.  The Court denied their motion on

1

1   November 20, 2014.  Docket No. 102.

2       Since then, the United States' investigation has continued and has yielded

3   sufficient evidence to support partial intervention in Relator's *qui tam* action with

4   respect to claims and allegations that the Defendants submitted or caused the submission

5   of claims to Medicare for unnecessary inpatient stays as pled against all defendants other

6   than defendants Luis Leon and Prime Healthcare Foundation.  Declaration of Lynn

7   Healey Scaduto ("Scaduto Decl."), ¶ 2.  For example, we have learned since December

8   23, 2013 that multiple witnesses who have worked at different Prime hospitals state that

9   defendant Reddy would, among other things: (1) criticize Emergency Department

10  ("ED") doctors and demand their termination if he decided they were passing up

11  opportunities to cause the admission of Medicare beneficiaries; (2) request increased

12  work schedules for ED doctors whose patients had a relatively high rate of admission;

13  (3) request decreased or discontinued work schedules for ED doctors whose patients had

14  a relatively low rate of admission; (4) tell ED doctors to find a way to admit all patients

15  over 65 because they all have insurance; and (5) tell ED doctors that an insured patient

16  who would be in the ED for more than two hours waiting for test results should be

17  admitted but an uninsured patient could stay in the ED for 6 to 8 hours awaiting results

18  and then be discharged.  Scaduto Decl., ¶ 3.

19      Additionally, the Office of the Inspector General of the Department of Health and

20  Human Services has issued more than 10 subpoenas in this investigation since December

21  23, 2013, including two to Prime and several to ED physician groups that provide staff

22  for Prime hospital EDs.  Among the many things the United States obtained were

23  "PEPPER" reports produced by Prime that had been prepared by a Medicare contractor

24  and put Prime on notice of the same pattern of seemingly unnecessary inpatient

25  admissions that Relator later alleged.  Scaduto Decl., ¶ 4.

26      After December 23, 2013, the United States also obtained the results of a medical

27  review of more than 600 admissions that had been underway for several months but not

28  completed as of that date.  Scaduto Decl., ¶ 5. The United States also served after that

2

date a subpoena for additional medical records and obtained a medical review of more than 100 medical records taken from the responsive production.  *Id.*  The United States also conducted additional analyses of Medicare claims data that revealed, among other things, that hospital billings for beneficiaries treated on "observation" status would plummet after Prime acquired a hospital.  *Id.*

Settlement prospects have now been exhausted.  Scaduto Decl., ¶ 7.  Relator supports the United States' partial intervention, and Defendants have informed the United States that they will not oppose this motion.  *Id.* at ¶ 8.

## II.   ARGUMENT

The FCA provides that, even when the United States elects not to proceed with a *qui tam* action, a court may "permit the Government to intervene at a later date upon a showing of good cause."  31 U.S.C. § 3730(c)(3).  In enacting § 3730(c)(3), the U.S. Congress recognized that the "limited opportunity for Government involvement [during the investigation period] could in some cases work to the detriment of the Government's interests."  S. Rep. No. 99-345, at 26-27 (reprinted at 1986 U.S.C.C.A.N. 5266, at 5291-92).  Here, the United States submits that it has good cause to intervene on the allegations in the complaint that Defendants routinely submit, or cause to be submitted, inflated claims to Medicare for beneficiaries who were admitted to the hospital as inpatients when they should have been treated as outpatients.

In *United States ex rel. Stone v. Rockwell Int'l Corp.*, 950 F. Supp. 1046 (D. Colo. 1996) and *United States ex rel. Hall v. Schwartzman*, 887 F. Supp. 60 (E.D.N.Y. 1995), the courts found good cause for the United States' intervention after the United States initially declined to intervene.  In both *Rockwell* and *Schwartzman*, the courts found that new evidence obtained by the United States after it initially declined to intervene justified intervention at a later date.  *See* 950 F. Supp. at 1049; 887 F. Supp. at 62.

Here, as discussed in detail above, additional investigation has yielded additional evidence to support Relator's allegations and undermine Defendants' articulated defenses.  Scaduto Decl., ¶¶ 2-5.  In addition, like Relator here, the relators in both

*Rockwell* and *Schwartzman* supported intervention by the United States, a fact to which the *Rockwell* court assigned substantial weight. *See* 887 F.Supp. at 61-62; 950 F.Supp. at 1049. And both actions were at an early stage when the United States sought intervention, which supported the courts' conclusions that intervention would not unduly prejudice the defendants or delay the proceedings. *Id.* Here, likewise, allowing intervention is unlikely to further delay the proceedings because formal discovery had not yet gotten underway when it was stayed pending the outcome of the parties' settlement efforts.

Another factor that weighed in favor of intervention in *Rockwell* and was "of paramount importance" to the court there was the public interest. The court in *Rockwell* found that "participation in [the action] by the government will add significantly to the completeness and fairness of any trial." 950 F.Supp. at 1049. Allowing the United States to participate in the trial of this action is likewise in the public interest.

## III.   CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court issue an order granting the United States' motion to partially intervene in this

/ / /

/ / /

4

1   action, finding good cause for intervention and allowing the United States to file a

2   complaint in intervention within 30 days after the date of the Court's order.

3   Dated: May 23, 2016                     Respectfully submitted,

4                                           BENJAMIN C. MIZER
                                            Principal Deputy Assistant Attorney General
5                                           EILEEN M. DECKER
                                            United States Attorney
6                                           DOROTHY A. SCHOUTEN, AUSA
                                            Chief, Civil Division
7                                           DAVID K. BARRETT, AUSA
                                            Chief, Civil Fraud Section
8                                           LINDA A. KONTOS, AUSA
                                            Deputy Chief, Civil Fraud Section
9                                           MICHAEL D. GRANSTON
                                            DANIEL R. ANDERSON
10                                          MARIE V. BONKOWSKI
                                            Attorneys, Civil Division
11                                          United States Department of Justice

12

13                                          /s/  Lynn Healey Scaduto
                                            LYNN HEALEY SCADUTO, AUSA
14                                          Attorneys for the United States of America

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

## <u>DECLARATION OF LYNN HEALEY SCADUTO</u>

I, Lynn Healey Scaduto, declare:

1.     I am an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Central District of California.  Since December 2015, I have been the attorney within the Office with primary responsibility for the instant case filed by *qui tam* plaintiff Karin Berntsen ("Relator").  I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto.

2.     The United States' investigation has continued since it filed on December 23, 2013, a Notice of the United States That It Is Not Intervening At This Time.  The continued investigation has included, among other things, numerous witness interviews, analysis of documents and work with medical and coding consultants to evaluate the validity of numerous claims for reimbursement that Prime has submitted to Medicare. This investigation has yielded additional evidence to support Relator's allegations and undermine Defendants' articulated defenses with respect to claims and allegations that the Defendants submitted or caused the submission of claims to Medicare for unnecessary inpatient stays as pled against all defendants other than defendants Luis Leon and Prime Healthcare Foundation.

3.     For example, we have learned since December 23, 2013 that multiple witnesses who have worked at different Prime hospitals state that defendant Reddy would, among other things: (1) criticize Emergency Department ("ED") doctors and demand their termination if he decided they were passing up opportunities to cause the admission of Medicare beneficiaries; (2) request increased work schedules for ED doctors whose patients had a relatively high rate of admission; (3) request decreased or discontinued work schedules for ED doctors whose patients had a relatively low rate of admission; (4) tell ED doctors to find a way to admit all patients over 65 because they all have insurance; and (5) tell ED doctors that an insured patient who would be in the ED for more than two hours waiting for test results should be admitted but an uninsured patient could stay in the ED for 6 to 8 hours awaiting results and then be discharged.

1

4.      Additionally, the Office of the Inspector General of the Department of Health and Human Services has issued more than 10 subpoenas in this investigation since December 23, 2013, including two to Prime and several to ED physician groups that provide staff for Prime hospital EDs.  Among the many things the United States obtained were "PEPPER" reports produced by Prime that had been prepared by a Medicare contractor and put Prime on notice of the same pattern of seemingly unnecessary inpatient admissions that Relator later alleged.

5.      After December 23, 2013, the United States obtained the results of a primary medical review of more than 600 admissions that had been underway for several months but not completed as of that date.  The United States also served after that date a subpoena for additional medical records and obtained a medical review of more than 100 medical records taken from the responsive production.

6.      The United States also conducted additional statistical analyses of Medicare claims data that revealed, among other things, that hospital billings for beneficiaries treated on "observation" status would plummet after Prime acquired a hospital.

7.      Relator, Defendants and the United States have engaged since December 23, 2013, in extensive efforts to settle this matter.  On April 27, 2016, Defendants informed the United States and Relator that Defendants had concluded that further settlement discussions would not be worthwhile.

8.      Relator has informed the United States that it supports partial intervention by the United States.  Mark Hardiman, counsel to Defendants, informed me on May 16, 2016, that Defendants will not oppose this motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 23, 2016, at Los Angeles, California.


*/s/ Lynn Healey Scaduto*
LYNN HEALEY SCADUTO

2